IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel.<br>ANDREW MATTHEWS,<br><br>    Petitioner,<br><br>v.<br><br>CHARLES HINSLEY,<br><br>    Respondent. | Judge Ronald A. Guzmán<br><br>04 C 2909 |

## MEMORANDUM OPINION AND ORDER

Petitioner Andrew Matthews was convicted in state court of first degree murder and sentenced to an extended term of eighty years of imprisonment. He now petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated below, the Court denies the petition.

## FACTS

The following facts, as outlined by the Illinois Appellate Court in *People v. Matthews*, No. 1-93-1889 (Ill. App. Ct. Nov. 14, 1995), are presumed to be correct. *See* 28 U.S.C. § 2254(e)(1) (2000). At approximately 9:00 p.m. on August 5, 1991, Robert Brown was shot to death as he played basketball with friends at Cooper Park in Chicago. Matthews was charged with first degree murder for the death of Brown. Matthews' theory of defense at trial was misidentification. Several witnesses testified at trial and identified Matthews as the gunman.

-1-

Nathaniel Reed testified that he was playing basketball with Brown. He noticed two men, whom he did not know, walking towards the basketball court from the direction of the field house. Reed noticed the lighter-skinned man lifting his arm upwards from his pants towards his waist. Seconds later, he heard shots being fired. Reed testified that he and Brown began to run. Reed ran out of the park and returned later to find Brown on the ground. Reed told police that the taller of the two men was light-skinned. Reed identified Matthews as the lighter-skinned man in a police photo array, in a lineup, and in court. Reed testified on cross-examination that the lighter-skinned man had scratches on his face but that he had not told police this detail.

George Rawls also testified that he was playing basketball with Brown when two men approached from the field house. Rawls did not know the men, but he noticed that the men walked into and out of the park several times. When Rawls heard the gunshots, he ran out of the park. Rawls identified Matthews in a lineup and in court.

Anthony Story testified that he and his nephew, Lavante Story, were in Cooper Park on the evening of August 5, 1991. He further testified that he saw three men enter the park, one of whom he knew to be Mario Pearrie. According to Anthony, Pearrie broke away from the group while the other two men passed near Anthony and Lavante and continued walking toward the field house. Anthony and Lavante followed the two men, but lost sight of them momentarily. Anthony testified that he saw the men take out handguns and shoot toward the players on the basketball court. Anthony identified Matthews in a photo array, in a lineup, and at trial. He did not recall whether the taller man had scratches on his face.

Detective Angelo Pesavento of the Chicago Police Department testified that he found Brown's body face-down on the sidewalk near the field house. Pesavento found two live .357

Magnum rounds adjacent to the field house, a bullet fragment beneath the body and a "pop mark" in the sidewalk beneath the body. Pesavento testified that he obtained a photograph of defendant and used it—along with four other photographs—to create a photo array. At trial, the government asked Pesavento, "What are those photographs?" Pesavento responded, "They are commonly referred to as IR photos taken by the Chicago Police Department." Defense counsel objected to the response, and the court sustained the objection and instructed the jury to disregard the answer.

Nancy Jones, an assistant medical examiner for Cook County, testified that Brown died as a result of five gunshot wounds. Jones testified that there were entrance wounds in Brown's right upper back, left lower back, left buttock and left forearm.

Matthews presented witnesses to support his misidentification theory. Chandra Lee, Matthews' girlfriend's sister, testified that she witnessed a fight between her sister and Matthews in the summer of 1991. Matthews' face was scratched during the fight. Carrie Matthews, Matthews' mother, testified that she saw Matthews on July 28, 1991, when he picked her up from a concert, and July 30, 1991, when he took her to the train station for her trip to New Orleans. On both occasions, she observed scratches and a scar on his face. At trial, Matthews' attorney questioned Carrie Matthews about the location of her workplace, the nature of her trip to New Orleans on July 30, the companions on her trip, the mode of transportation Matthews used to take her to the train station on July 30, 1991, and her destination after Matthews picked her up from a concert on July 28, 1991. The State objected to this testimony, and the court sustained the objection.

## PROCEDURAL HISTORY

Matthews was tried for and convicted of first degree murder in late October 1992. The trial court deemed Matthews eligible for an extended-term sentence. On January 29, 1993, the trial court imposed a sentence of eighty years of imprisonment. (Gov't's Ex. A, *People v. Matthews*, No. 91-CR-21631.) On direct appeal, Matthews raised three claims: (1) he was denied a fair trial when the trial court improperly restricted the testimony of defense witness, Carrie Matthews; (2) he was denied a fair trial when the jury heard testimony from Pesavento that a photograph of the defendant was an IR photo taken by the Chicago Police Department; and (3) the trial court abused its discretion in imposing an extended sentence. (Gov't Ex. B, *People v. Matthews*, No. 1-93-1889 (Ill. App. Ct. Nov. 14, 1995).) On November 14, 1995, the Illinois Appellate Court affirmed Matthews' conviction. (*Id.* at 1.) On January 25, 1996, Matthews petitioned for leave to appeal to the Supreme Court of Illinois. (Gov't Ex. C, Pet. Leave Appeal, *People v. Matthews*, No. 80508.) His petition for leave to appeal consisted of a cover sheet entitled "Petition for Leave to Appeal" and the required appendix that consisted of a copy of the Illinois Appellate Court's order. (*Id.*) On April 13, 1996, the Supreme Court of Illinois summarily denied Matthews' petition for leave to appeal. (Gov't Ex. D, *People v. Matthews*, 664 N.E.2d 645, 645 (Ill. 1996).)

On October 8, 1996, Matthews filed his first petition for post-conviction relief in the Circuit Court of Cook County. (Gov't Ex. E, Pet. Post-conviction Relief, *People v. Matthews*, No. 91-CR-21631.) In his petition, Matthews raised four claims: (1) violation of his Sixth Amendment right to effective counsel based on his trial counsel's failure to object to the State's exclusion of prospective jurors based on race; (2) violation of his due process rights as guaranteed

by the Fourteenth Amendment based on allowing Detective Pesavento's testimony that a photograph of Matthews was an IR photo taken by the Chicago Police Department; (3) violation of his Sixth Amendment rights based on his trial counsel's failure to present an alibi defense and call witnesses who could testify that Matthews was not at the scene of the crime; and (4) violation of his Sixth Amendment rights based on his trial counsel's failure to raise the issue of conflict of interest because the trial judge was being represented by the State Attorneys' office in an unrelated civil rights case. (*Id.*)

Matthews' post-conviction petition was dismissed by the Circuit Court of Cook County. (*See* Gov't Ex. F at 1, *People v. Matthews*, No. 1-97-0486 (Ill. App. Ct. Oct. 28, 1996) (Rule 23 Order).) Matthews appealed the dismissal of his first post-conviction petition and on October 28, 1998, the Illinois Appellate Court affirmed the dismissal and allowed the public defender to withdraw as counsel. (*Id.* at 2.) The Illinois Appellate Court examined the record and found no issues of arguable merit. (*Id.*)

On December 10, 1998, Matthews filed a petition for leave to appeal to the Supreme Court of Illinois arguing that his appellate counsel during the post-conviction proceedings provided ineffective assistance because she moved to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987) based on the untimeliness of the petition. (Gov't Ex. G, Pet. Leave Appeal, *People v. Matthews*, No. 86727, at 1.) On February 3, 1999, the Supreme Court of Illinois denied the petition for leave to appeal. (Gov't Ex. H at 1, *People v. Matthews*, No. 86727 (Ill. 1999).)

On April 28, 1999, Matthews filed a second petition for post-conviction relief. (Gov't Ex. I, Pet. Post-conviction Relief, *People v. Matthews*, No. 91-CR-21631.) Matthews argued that his

counsel provided ineffective assistance because they did not investigate witnesses that could have exonerated Matthews. (*Id.* at 6.) In an affidavit, Mario Pearrie stated that Matthews was not at the scene of the crime when it occurred and that Pearrie, not Matthews, shot Brown. (Gov't Ex. I1, Pearrie Aff. at 1-2.) The Circuit Court of Cook County denied the second post-conviction petition. (Gov't Ex. J, *People v. Matthews*, No. 91-CR-21631-01 (Ill. Cir. Ct., Cook Cty. Aug. 4, 1999.) The court found that the petition was time-barred and also found that the alibi witness was unreliable and would not overcome the substantial evidence against Matthews. (*Id.* at 4-5.)

On March 6, 2000, the court granted Matthews' motion to file a late notice of appeal of the dismissal of his second post-conviction petition. (*See* Gov't Ex. M, *People v. Matthews*, No. 1-00-0555 (Ill. App. Ct. Sept. 26, 2003).) Matthews' counsel moved to withdraw on October 26, 2000. (Gov't Ex. K, Pet'r Resp., *People v. Matthews*, No. 1-00-0555.) The Illinois Appellate Court denied the motion and raised, *sua sponte*, its own issue. (Gov't Ex. L, *People v. Matthews*, No. 1-00-0555 (Ill. App. Ct. Mar. 28, 2001).) The court instructed the parties that the only issue before it was whether *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), applied retroactively to the case. (*Id.*) On September 26, 2003, the Illinois Appellate Court held that, based on Illinois Supreme Court decisions, *Apprendi* did not apply and affirmed the dismissal of Matthews' second post-conviction petition. (Gov't Ex. M, *People v. Matthews*, No. 1-00-0555 (Ill. App. Ct. Sept. 26, 2003).)

On November 14, 2003, Matthews filed a petition for leave to appeal with the Supreme Court of Illinois. (Gov't Ex. N, Pet. Leave Appeal, *People v. Matthews*, No 97361.) This petition for leave to appeal was denied on January 28, 2004. (Gov't Ex. O, *People v. Matthews*, No. 97361 (Ill. 2004).)

On April 23, 2004, Matthews filed this petition for a writ of habeas corpus. He raises the following claims: (1) the trial court denied Matthews a fair trial when it improperly restricted the testimony of defense witness Carrie Matthews, admitted Detective Pesavento's testimony that the photograph of Matthews the police used in the array had been taken by the Chicago Police Department, and abused its discretion when it sentenced him to an eighty-year extended sentence; (2) the trial court violated his Sixth Amendment right to a jury trial under *Apprendi v. New Jersey* when it found him eligible for an extended-term sentence; (3) trial and appellate counsel provided ineffective assistance of counsel because they did not investigate affidavits from witnesses; and (4) newly discovered evidence has not been investigated. (Habeas Pet. at 5-6.)

## DISCUSSION

Review of Matthews' petition for writ of habeas corpus is governed by 28 U.S.C. § 2254. A writ of habeas corpus will be granted when the prisoner is held in state custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Before the Court addresses the merits of claims raised in a petition for habeas corpus, it must first determine whether the petitioner has exhausted his available state remedies. *Spreitzer v. Schomig*, 219 F.3d 639, 644 (7th Cir. 2000). Claims must first be fully and fairly presented to the state courts. *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999). To fulfill this requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To satisfy "one complete round" of appellate review in Illinois, petitioner must present his claims on either direct appeal or post-

conviction review at each stage of the appellate process, including the Illinois Supreme Court. *Id.* at 847-48; *see White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999) (applying rule in the context of post-conviction proceedings). Issues that are not carried through an entire round of review are procedurally defaulted and cannot be reviewed in a federal habeas proceeding. *O'Sullivan*, 526 U.S. at 848.

Matthews' first claim, *i.e.*, that he was denied a fair trial because the trial court improperly restricted Carrie Matthews' testimony, improperly permitted Detective Angelo Pesavento to testify that Matthews' photograph used in the array was an IR photo taken by the police, and abused its discretion in finding him eligible for an excessive sentence, is procedurally defaulted. On direct appeal of his conviction, he raised, and the Illinois Appellate Court addressed, these issues in terms of violations of state, not federal, law. (*See* Gov't Ex. B, *People v. Matthews*, No. 1-93-1889 (Ill. App. Ct. Nov. 14, 1995).) Thus he failed to exhaust his available state remedies because he failed to present these issues as violations of federal law in state court.

Further, even if the Court could construe these claims as being properly presented before the Illinois Appellate Court, which they were not, Matthews failed to raise them in his petition for leave to appeal to the Illinois Supreme Court. (*See* Gov't Ex. C, Pet. Leave Appeal.) Matthews was required to do more than merely file a cover sheet entitled "Petition for Leave to Appeal" attached to the appendix (that included the required copy of the Appellate Court's order) to avoid procedural default. *Cf.* ILL. S. CT. R. 315(b)(3-6); *Washington v. Manning*, No. 97 C 7746, 1999 WL 982956, at *6 (N.D. Ill. Aug. 26, 1998) ("[S]imply submitting a bare-bones PLA will not suffice; the petitioner is required to, among other things, explain both why the appellate court's decision is wrong and why the [Illinois] Supreme Court should grant review"). Because

–8–

Matthews failed to raise these issues at each stage of the appellate process, including the Illinois Supreme Court, this claim is procedurally defaulted.

Matthews' second claim, *i.e.*, that the trial court violated his Sixth Amendment right to a jury trial under *Apprendi v. New Jersey*, 530 U.S. at 490, when it found him eligible for an extended-term sentence is also procedurally defaulted for failure to exhaust state remedies. The Illinois Appellate Court *sua sponte* raised and addressed the *Apprendi* issue when Matthews appealed the dismissal of his second post-conviction petition. (Gov't Ex. L, *People v. Matthews*, No. 1-00-5555 (Ill. App. Ct. Mar. 28, 2001); Gov't Ex. M, *People v. Matthews*, No. 03-1204, at 1-2 (Ill. App. Ct. Sept. 26, 2003).) The Illinois Appellate Court denied the petition and held that *Apprendi* did not apply to Matthew's case because the state supreme court had found *Apprendi* did not apply retroactively to cases on collateral review. (*See* Gov't Ex. M, *People v. Matthews*, No. 03-1204, at 2 (citing *People v. De La Paz*, 791 N.E.2d 489, 497 (Ill. 2003).) Matthews failed to raise the *Apprendi* issue when he petitioned for leave to appeal to the Illinois Supreme Court, choosing instead to raise other issues. (*See* Gov't Ex. N, Pet. Leave Appeal.) Therefore, Matthews' *Apprendi* claim is procedurally defaulted.

Matthews' third and fourth claims contend that his trial[1] and appellate attorneys and the state courts failed to investigate witness' affidavits and newly discovered evidence. In support of these claims, Matthews appears to rely on the affidavits of Candace Claybrooks and Mario Pearrie.

---

[1] To the extent that Matthews contends that his trial counsel violated his Sixth Amendment right to effective counsel based on his failure to present an alibi defense and call witnesses who could testify that he was not at the scene of the crime on the night of the murder, such claim is procedurally defaulted because, although Matthews raised this claim in his first post-conviction petition, he failed to raise it in his petition for leave to appeal to the Illinois Supreme Court. (*See* Gov't Ex. G, Pet. Leave Appeal at 2-3.)

Claybrooks' affidavit, dated August 4, 2000, was submitted for the first time as an exhibit to Matthews' appeal of the dismissal of his second post-conviction petition. Because Matthews failed to submit Claybrooks' affidavit to the state trial court during his second post-conviction proceeding, any claim based on Claybrooks' affidavit has not gone through a full round of the state's post-conviction process. Accordingly, this claim is procedurally defaulted.

Pearrie's affidavit, dated August 5, 1998, was first submitted as an exhibit to Matthews' second post-conviction petition. To the extent that Matthews blames the state courts for failure to investigate the facts raised in the affidavit, he failed to raise the issue at any point during his state court proceedings. To the extent that Matthews faults his counsel for failing to investigate, this claim is procedurally defaulted because the state trial court rejected it on independent state law grounds.

A claim is procedurally defaulted when the state court declines to reach the merits of the federal claim, relying instead on independent state law grounds adequate to support its judgment. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). A state court judgment is independent if the state court relied on a state, rather than a federal, law or rule that justifies the court's decision, and is adequate if the court's actions are consistent and reasonable. *Prihoda v. McCaughtry*, 910 F.2d 1379, 1382-84 (7th Cir. 1990). In order to proceed in federal court under a habeas corpus petition, the claims must present possible violations of the Constitution, laws, or treaties of the United States and the state courts must have reached the constitutional merits of the claims. *Stewart v. Smith*, 536 U.S. 856, 860 (2002). Federal habeas powers do not allow federal courts to reverse a conviction based on a belief that a state court incorrectly applied state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

The Circuit Court of Cook County held that Matthews' second post-conviction petition was not timely filed under 725 ILL. COMP. STAT 5/122-1. (Gov't Ex. J, *People v. Matthews*, No. 91 CR 21631, at 5 (Ill. Cir. Ct., Cook Cty. June 30, 1999); *see Barksdale v. Lane*, 957 F.2d 379, 382 (7th Cir. 1992) (stating that failure to comply with statute of limitations for filing post-conviction petition is an independent and adequate state ground). The court held that under state law, Matthews had until March 15, 1996 to commence his post-conviction proceedings, and Matthews' second petition was not filed until April 28, 1999. (*Id.* at 5-6.) The court also held that Matthews failed to establish that the delay in filing was excusable. (*Id.*) The court further held that even if Matthews' second post-conviction petition were not statutorily barred, he waived his claims by not including them in his first post-conviction petition and failed to establish that the exception to waiver applied, *i.e.*, that his first post-conviction proceedings were fundamentally deficient. (*Id.* at 6.) Therefore, Matthews' third and fourth claims are defaulted because the state court relied on independent and adequate state law grounds.

Thus, the Court holds that each and every one of Matthews' claims raised in his habeas petition have been procedurally defaulted. A habeas petitioner must "demonstrate cause for his state-court default of any federal claim, and prejudice therefrom, before the federal habeas court will consider the merits of that claim." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). "The one exception to that rule . . . is the circumstance in which the habeas petitioner can demonstrate a sufficient probability that our failure to review his federal claim will result in a fundamental miscarriage of justice." *Id.*

Unfortunately for Matthews, he has not even attempted to established cause, prejudice, or fundamental miscarriage of justice in the instant habeas petition. "Cause" has been defined as

–11–

"some external objective factor, such as interference by officials or unavailability of the factual or legal basis for a claim, which impeded compliance with the state's procedural rule." *Barksdale*, 957 F.2d at 385 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

His first and second claims are procedurally defaulted because Matthews, acting *pro se*, failed to raise the issues in his petition for leave to appeal to the Supreme Court, and he has not explained why his omissions constitute cause. There is no constitutional right to an attorney in discretionary appeals or in state post-conviction proceedings. *Coleman*, 501 U.S. at 752 (post-conviction proceeding); *Wainwright v. Torna*, 455 U.S. 586, 587 (1982) (discretionary appeal). "[T]hus, a petitioner's failure to act or think like a lawyer cannot be cause for failing to assert a claim." *Henderson v. Cohn*, 919 F.2d 1270, 1272 (7th Cir. 1990) (internal quotations omitted). Thus, Matthews would not have been able to establish cause for these procedural defaulted claims even if he had tried.

With regard to his third and fourth claims, Matthews makes no attempt to explain why his nearly three-year delay in filing his second post-conviction petition was not due to his culpable negligence. For example, he does not explain why it took him eight years to obtain the affidavit of Candace Claybrooks that provides him with an alibi and why he waited over eight months to file his second post-conviction petition after Mario Pearrie signed an affidavit stating that he, not Matthews, shot Brown. Even if he were to try to lay the blame at his counsel's door, for reasons discussed above, he has no claim for ineffective assistance of counsel during his post-conviction proceedings. Accordingly, this Court respects the state court's finding of procedural default by petitioner and holds that Matthews has failed to establish cause for the default.

As noted above, Matthews did not attempt to demonstrate in his habeas petition that there is a sufficient probability that the Court's failure to review his federal claim will result in a fundamental miscarriage of justice. "A fundamental miscarriage of justice occurs when a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005) (quotations omitted). To establish a fundamental miscarriage of justice, a habeas petitioner must show that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(B).

Matthews never stated that Claybrooks could provide him with an alibi until he appealed the dismissal of his second post-conviction petition nearly eight years after his conviction. In fact, he never mentioned Claybrooks by name when he complained to the ARDC about his trial attorney's purported failings immediately after Matthews was convicted. Matthews merely complained that his trial counsel failed to call Mr. and Mrs. Simpson as alleged alibi witnesses.[2] Given these facts, it is doubtful that a reasonable factfinder would credit Claybrooks' alibi testimony.

Pearrie's affidavit stating that he, not Matthews, was the shooter is also insufficient to establish that no rational factfinder would have found Matthews guilty of murdering Brown. Pearrie states in his affidavit that he previously went along with another co-defendant's story that Matthews was the shooter in order to bargain for a lesser charge. "Attempts by one defendant to

---

[2]His trial counsel declined to call Mr. and Mrs. Simpson as alibi witnesses because it would have opened the door for the State to introduce evidence of a contradictory alibi statement allegedly made by Matthews to the police.

take full responsibility after trial and conviction are common and viewed with skepticism." *United States v. Karnel*, 965 F.2d 484, 494 n.25 (7th Cir. 1992) (quotations and citations omitted). Pearrie's confession that he was the shooter comes six years after Matthews' conviction. Thus the timing of the alleged confession is extremely suspect.

This is especially true given the fact that at trial, three eyewitnesses testified that Matthews was the shooter. Further, Anthony Story testified that (1) he saw three men approach the park, one of whom he recognized as Mario Pearrie; (2) Pearrie broke away from the group and the other two men continued to walk; (3) the two men spoke briefly to Story and continued walking toward the basketball court; (4) he saw the two men shoot at the players on the court; and (5) he identified Matthews as the shooter in a photo array, in a lineup and at trial. Because there are three witnesses who contradict Claybrooks and Pearrie's belatedly-attested-to version of events, the Court holds that Matthews has failed to establish that no rational factfinder would have convicted him had they heard their testimony. *See Hayes v. Battaglia*, 403 F.3d at 935, 938 (7th Cir. 2005) ("[I]t is black letter law that testimony of a single eyewitness suffices for conviction even if 20 bishops testify that the eyewitness is a liar.") Given the suspect nature of Claybrooks and Pearrie's testimony, the Court doubts that a second jury would be any less likely to convict Matthews of Brown's murder than was the first.

In sum, all of Matthews' habeas claims are procedurally defaulted. He has failed to establish cause for the defaults or show that no reasonable factfinder would have found him guilty of the underlying offense absent his trial counsel's purported failure to call Pearrie and Claybrooks as witnesses on his behalf. Accordingly, the Court denies the petition.

## CONCLUSION

For the foregoing reasons, the Court denies the petition for writ of habeas corpus and dismisses the case with prejudice.

**SO ORDERED**           **ENTERED:**

JUL 2 7 2006

Jul 27, 2006

**HON. RONALD A. GUZMAN**
**United States Judge**